Filed 7/29/26  Hope and Trust Trading v. Ciling CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| HOPE AND TRUST TRADING, INC. et al., | B351756 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. 19STCV29553) |
| v. | |
| SAMMY CILING et al., | |
| Defendants and Appellants. | |

Appeal from order of the Superior Court of Los Angeles County, Alison M. Mackenzie, Judge.  Affirmed.

Sammy Ciling, in pro. per., for Defendant and Appellant Sammy Ciling.

Anke Ciling, in pro. per., for Defendant and Appellant Anke Ciling.

Debbie Sutz for Plaintiffs and Respondents Hope and Trust Trading, Inc. and Seyedjalil Firoozabadi.

_____

In 2019, Seyedjalil Firoozabadi and his company, Hope and Trust Trading, Inc. (collectively, HTT), filed a complaint alleging that married couple Sammy and Anke Ciling had breached a contract to sell to HTT shares in a medical imaging business.[1] Following a four-day court trial, the court found that the Cilings had engaged in fraud and had breached the agreement "intentionally and without justification." The court then entered a $2.6 million judgment in favor of HTT.

Four years later, HTT filed a motion seeking approximately $650,000 in attorney fees and costs incurred in its attempt to collect on the still-unsatisfied judgment. In support, HTT's counsel submitted a declaration detailing the Cilings' efforts to evade the judgment by transferring certain of their properties to sham business entities and by filing a frivolous federal lawsuit against HTT. The trial court concluded that HTT could recover its postjudgment fees and costs, but found that the $500 hourly billing rate for one member of HTT's legal team—a disbarred attorney performing paralegal tasks—was unreasonably high. Accordingly, the court awarded HTT fees and costs in the reduced amount of $356,223.

The Cilings now ask us to reverse the award. They argue the court abused its discretion by (1) awarding fees related to "collateral litigation activity" unnecessary to enforce the judgment, (2) "compensating extensive litigation services performed by a disbarred attorney," and (3) "denying [the Cilings'] repeated requests for a verified accounting of prior collections, offsets,

---

[1] In the complaint, Seyedjalil uses the surname "Mirjafarifiroozabadi" rather than "Firoozabadi." The parties, however, do not dispute that "Seyedjalil Mirjafarifiroozabadi" and "Seyedjalil Firoozabadi" are the same individual.

operational recoveries, and enforcement proceeds." (Capitalization omitted.)

We, however, conclude the Cilings fail to demonstrate any reversible error: HTT's counsel's billing records specifically describe the tasks performed, and they do not contain any charges for litigation activity other than work related to collecting on the judgment. The Cilings cite nothing in the record supporting that the disbarred attorney's work for HTT constituted the unauthorized practice of law. And the challenge to the court's prior rulings denying the Cilings' request for an accounting is not properly before us.

Accordingly, we affirm.

## FACTUAL SUMMARY AND PROCEDURAL HISTORY

We summarize only the facts and procedural history relevant to our resolution of this appeal.

On April 13, 2021, the trial court entered an approximately $2.6 million judgment in favor of HTT and against the Cilings.[2] The $2.6 million award included $800,000 in punitive damages and approximately $200,000 in attorney fees, costs, and expenses.

On October 16, 2025, HTT filed a request—styled as a "motion to amend judgment to add costs of enforcement"— for $643,300 in attorney fees and $3,833 in costs incurred in attempting to enforce the April 2021 judgment, which HTT asserted the Cilings had failed to satisfy even in part. HTT further requested that the court "amend the . . . judgment . . . to reflect the

---

[2] The judgment also includes as liable defendants two entities for which the Cilings serve as authorized agents: Sanath, Inc. and California Medical Imaging Corp. These entities are not parties to this appeal.

additional costs, interest, and attorney[ ] fees." (Capitalization omitted.)

In support, HTT submitted a declaration from its attorney, Debbie Sutz, detailing the Cilings' conduct and the attorney fees and costs HTT incurred as a result of its collection efforts. Sutz attested, in pertinent part, that she had substituted into the case in January 2024 to assist HTT in enforcing the judgment. She learned from her review of the case materials that HTT's prior attorneys had attempted to satisfy the judgment by levying on a property owned by the Cilings located on Carancho Road in Temecula, California. Karl Lowry, a friend of the Cilings, had impeded HTT's efforts by filing an action against HTT in Riverside County. In the Riverside action—which the parties litigated for nearly three years—Lowry alleged that he was the beneficiary of two trust deeds against the Carancho property.

In March 2024, Sutz filed a first amended cross-complaint (FACC) in the Riverside action on behalf of HTT against Lowry, the Cilings, and certain entity defendants. The FACC challenged Lowry's trust deeds against the Carancho property, a third trust deed against that property held by NewRez LLC, trust deeds recorded against two of the Cilings' other Temecula properties, and the Cilings' homestead exemption. In advance of the July 2025 trial date in that case, Lowry and HTT negotiated a settlement pursuant to which Lowry agreed to release all the trust deeds.

Two days before the scheduled trial, however, a new party—Ultim8 Equities LLC (Ultim8)—filed an ex parte application to intervene in the Riverside action and stay the trial. Ultim8 claimed that it owned certain of the trust deeds against the Carancho property by virtue of an assignment executed over a year earlier. Sutz attested that "[t]he Ultim8 claim was obviously a sham because it was coming in at the eleventh hour; the original

4

transferee was an LLC owned by one of the Ciling children; and the transaction in which Ultim8 claimed to be the owner of those trust deeds made no logical sense."

The court in the Riverside action denied the ex parte application and entered the stipulated judgment between Lowry and HTT, as well as a default judgment against the Cilings. Ultim8, however, appealed the denial of its ex parte application, and the Cilings appealed the default judgment entered against them. Sutz attested that, as a result, HTT was forced to incur attorney fees to oppose each appeal.

Sutz further attested that, in July 2025, the Cilings filed a frivolous federal lawsuit against HTT, HTT's former counsel, and Sutz herself. In that suit, the Cilings alleged that the April 2021 judgment and the judgments in the Riverside action were void due to fraud and due process violations. Sutz attested that she "spent a substantial amount of time reviewing and opposing the federal court action" on behalf of HTT, and that a motion to dismiss the case then was pending.[3]

Sutz attached to her declaration 14 exhibits, including the complaints and judgments in the Riverside action, the notices of appeal filed by Ultim8 and the Cilings in the Riverside action, and the federal court complaint. The exhibits also included billing records from Sutz and from Michael Rubin, the disbarred attorney whom Sutz had hired to assist her with HTT's matter. The billing

---

[3] The federal court later granted the motion to dismiss with leave to amend. And in April 2026, in response to a renewed motion to dismiss by HTT, the federal court dismissed the action with prejudice. (See *Sammy Ciling et al. v. Omid Mir Jafari et al.* (C.D.Cal. Apr. 22, 2026, 8-25-cv-01649-MRA-ADS).) We take judicial notice of these rulings pursuant to Evidence Code section 452, subdivision (d).

5

records reflect that Sutz and Rubin each charged a $500 hourly rate and collectively performed 1,286.6 hours of work on HTT's matter, resulting in total attorney fees of $643,300.

As relevant here, Sutz attested that Rubin had "performed investigation, research, and extensive writing," and that his "services ha[d] been performed under [Sutz's] supervision" "in strict compliance with California State Bar rules." Rubin submitted a declaration in which he likewise attested: "I have assisted Ms. Sutz in this case from the time she was initially hired . . . . As an unlicensed attorney, I am authorized, under State Bar rules, to conduct support work like investigation, legal research, and writing. The work I performed in this case has been limited to those areas."

The Cilings filed an opposition to HTT's motion for fees and costs, arguing, inter alia, that (1) HTT could not engage in litigation because its corporate status "was forfeited and inactive with the California Secretary of State," (2) Seyedjalil Firoozabadi had changed his legal name to Omid Mir Jafari and had improperly used different names "to his advantage . . . seeking judgments as one man while avoiding capture as another," (3) HTT had seized two of the Cilings' "multimillion-dollar [medical imaging] businesses[,] along with receivables and equipment," through fraud, and (4) the court must order a verified accounting before authorizing "further collection" or "any increased . . . judgment amount."

Following a November 12, 2025 hearing, the trial court issued a written order granting HTT's motion in part. The court explained that, although styled as a "motion to amend judgment," HTT's motion was more properly characterized as (1) a motion for an order awarding postjudgment costs and attorney fees under

6

Code of Civil Procedure[4] section 685.090, and (2) an application for a renewal of judgment under section 683.120. The court rejected the Cilings' various arguments as unsupported by pertinent legal authority. It then concluded that HTT could recover its postjudgment fees and costs, but that Rubin's claimed billing rate of $500 per hour was "unreasonable." The court further concluded that "a reasonable hourly rate [was] $200," and therefore awarded HTT $356,223 in fees and costs, rather than the approximately $650,000 originally requested. Finally, the court denied without prejudice HTT's request to renew the judgment because HTT had "improperly included [its] application for a renewal order in [its] motion for an order awarding costs."

The Cilings timely appealed the award.

## DISCUSSION

### A.     Applicable Law and Standard of Review

"Under . . . section 685.040, a judgment creditor is entitled to the reasonable and necessary costs of enforcing the judgment." (*Conservatorship of McQueen* (2014) 59 Cal.4th 602, 604–605 (*McQueen*), fn. omitted.) Attorney fees expended in enforcing a judgment—even if incurred in a separate proceeding— qualify as collectible costs if the underlying judgment includes an award of attorney fees authorized by contract.[5] (See §§ 685.040, 1033.5, subd. (a)(10)(A); see *McQueen*, *supra*, at pp. 612–613 ["Although incurred in a separate proceeding, the attorney fees [the] plaintiff claims . . . were expended in an effort to maintain

---

[4] Further statutory references are to the Code of Civil Procedure.

[5] The Cilings do not dispute that the judgment here includes an award of contractually based attorney fees.

7

assets in [the] defendant's hands for potential satisfaction of the judgment in this case. They therefore came within the scope of what could be claimed . . . under section 685.040" (italics omitted)].)

"The judgment creditor may claim costs authorized by [s]ection 685.040 by noticed motion." (§ 685.080, subd. (a).) "Upon the filing of an order allowing the costs," such "[c]osts are added to and become a part of the judgment." (§ 685.090, subd. (a)(1).) We review a trial court's authority to award postjudgment fees and costs de novo. (See *Jaffe v. Pacelli* (2008) 165 Cal.App.4th 927, 934.) We otherwise review an order awarding such fees and costs for abuse of discretion. (*Ibid*.)

### B. The Cilings Fail To Demonstrate that the Court Abused Its Discretion in Awarding Fees and Costs

The Cilings contend the trial court abused its discretion in three ways—namely, by (1) awarding attorney fees for "collateral litigation activity" unrelated to enforcing the April 2021 judgment, (2) compensating HTT for work performed by Rubin, notwithstanding his disbarred status, and (3) denying the Cilings' "repeated" requests for a verified accounting of any "prior recoveries" or "offsets" against the underlying $2.6 million judgment.

"[I]t is a fundamental principle of appellate procedure that a trial court [order] is ordinarily presumed to be correct[,] and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the [order]." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 (*Jameson*).) And here, the Cilings fail to satisfy their burden.

First, HTT's counsel's billing records specifically describe the tasks performed, and they do not contain any charges for litigation

8

activity other than work related to enforcing the judgment. Further, the Cilings' related argument that "the record lacks substantial evidentiary findings" ignores that substantial evidence—including the Sutz declaration and attached exhibits—supports the court's implied finding that the fees were reasonable and necessary costs of enforcing the judgment. (See *Agnone v. Agnone* (2025) 111 Cal.App.5th 758, 767 [" '[e]ven where there are no express findings, we must review the trial court's exercise of discretion based on implied findings that are supported by substantial evidence' " (italics omitted)].)

Second, the Cilings cite no specific entries in the billing records (or any other specific portions of the appellate record) supporting that Rubin's work for HTT constituted the unauthorized practice of law. (Cf. *Estate of Condon* (1998) 65 Cal.App.4th 1138, 1142, fn. 4 ["[n]onmembers of the California State Bar may recover fees for services that nonattorneys may legally perform"]; Rules Prof. Conduct, rule 5.3.1(a)(5) & (c) [providing, in pertinent part, that "[a] lawyer may employ, associate in practice with, or assist an ineligible person," including "a member whose current status with the State Bar of California is disbarred," "to perform research, drafting or clerical activities"].)

Third, and finally, the Cilings' claim that the court erred by denying their earlier, "repeated requests for a verified accounting" is not properly before us. Nothing in our appellate record indicates the Cilings attempted to appeal these rulings.[6] Further, even were the issue properly presented, the Cilings' failure to provide an

---

[6] Only one such ruling appears in our appellate record: An October 13, 2025 order summarily denying Sammy Cilings' ex parte application for an accounting. Neither the application itself nor any transcript of the hearing on the application appears in the record.

9

adequate appellate record would prevent us from reviewing their claim. The Cilings assert that they have "identified approximately 89 to 96 pages of [accounts receivable] documentation" supporting that HTT already has seized from the Cilings two medical imaging businesses worth millions of dollars. But none of these accounts is in the record before us. (See *Jameson, supra*, 5 Cal.5th at p. 609 [" '[f]ailure to provide an adequate record on an issue requires that the issue be resolved against [the appellant]' "].)

We therefore conclude the Cilings fail to demonstrate the court abused its discretion in awarding HTT postjudgment fees and costs.[7] Accordingly, we affirm.

---

[7] In light of our conclusion, we need not address HTT's argument that the Cilings forfeited their claims in this appeal by failing to oppose HTT's separate November 29, 2025 memorandum of costs after judgment.

10

## DISPOSITION

The November 12, 2025 order is affirmed.  Respondents are awarded their costs on appeal.

NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur:


BENDIX, J.


WEINGART, J.